**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**IN RE: ALTA RESOURCES CORP.**
**DATA INCIDENT LITIGATION**

Master File No. 2:25-cv-0001-BBC

**This Document Relates To:**

ALL ACTIONS

---

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Laquina Brooks, Nathaniel Jungwirth, Lori Buscher, Sherika Neal, Melissa Kiesow, Deja Tulloch, and Becky Skotzke ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), bring this Consolidated Class Action Complaint (the "Complaint" or "CCAC") against Defendant Alta Resources Corp. ("Defendant" or "Alta"). The allegations set forth in this Complaint are based on the personal knowledge of the Plaintiffs and upon information and belief and further investigation of counsel.

## I. NATURE OF THE ACTION

1. This is a data breach class action against Defendant for its failure to adequately secure and safeguard confidential and sensitive information held throughout the typical course of business of Plaintiffs and the Class.

2. Sometime between November 17, 2023, and November 18, 2023, an unauthorized actor gained access to the Defendant's network and computer systems and obtained unauthorized access to Defendant's files (the "Data Breach").

3. Upon information and belief, a minimum of 37,363 individuals' information was accessed in the Data Breach. The information exposed or otherwise accessed by an unauthorized third-party in the Data Breach included Plaintiffs' and the Class's: (a) personally identifiable

information, including their names, Social Security numbers ("SSN"), financial account information, taxpayer identification numbers, and other government issued identification ("PII") and; (b) protected health information  including health insurance and other health and medical information ("PHI") (PII and PHI collectively "Private Information").[1]

4. Defendant allegedly became aware of the Data Breach in November of 2023.

5. After discovering encrypted files that evidenced an intrusion into its systems, Defendant investigated and engaged outside cybersecurity professionals and data privacy counsel.

6. On or about December 20, 2024, over 13 months after the intrusion into its systems, Defendant notified affected individuals that their Private Information was impacted in the Data Breach via a written notice letter ("Notice"). *See*, *e.g.*, Exhibit 1.

7. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiffs and the Class, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

8. The timeline betrays a shockingly ill-prepared cybersecurity posture. Notwithstanding that typical notification requirements are between thirty and sixty days, Defendant delayed in notifying Plaintiff for ***over a year***. This is strong evidence that Defendant lacks a reasonable cybersecurity incident response plan, which is an elementary aspect of any cybersecurity program and is designed to ensure timely responses and investigations.

9. Plaintiffs and the Class have taken reasonable steps to maintain the confidentiality and security of their Private Information.

---

[1] Off. of the Maine Atty. Gen., *Data Breach Notification Alta Resources Corp.* (Dec. 20, 2024), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0e914ae8-3620-4369-8169-4fd1a562ca27.html.

10. Plaintiffs and the Class reasonably expected Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

11. Defendant breached its duties and obligations by failing, in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing to comply with industry-standard data security practices; (5) failing to warn Plaintiffs and Class Members of Defendant's inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (8) failing to utilize widely available software able to detect and prevent this type of attack, and (9) otherwise failing to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

12. In this day and age of regular and consistent data security attacks and data breaches and given the sensitivity of the data entrusted to Defendant, this Data Breach is particularly egregious and foreseeable.

13. By implementing and maintaining reasonable safeguards and complying with standard data security practices, Defendant could have prevented this Data Breach.

14. Plaintiffs and the Class are now faced with a present and imminent lifetime risk of identity theft or fraud. These risks are made more substantial, and significant because of the inclusion of their SSN and PHI.

15. PII and PHI have great value to cyber criminals, especially an individual's SSN. As a direct cause of Defendant's Data Breach, Plaintiffs and the Class's Private Information is in the hands of cyber-criminals and may be available for sale on the dark web for other criminals to access and abuse at the expense of Plaintiffs and the Class. Plaintiffs and the Class face a current and lifetime risk of identity theft or fraud as a direct result of the Data Breach.

16. Defendant acknowledges the imminent threat the Data Breach has caused to Plaintiffs.

17. The modern cyber-criminal can use the Private Information and other information stolen in cyber-attacks to assume a victim's identity when carrying out various crimes such as:

a. obtaining and using a victim's credit history;

b. making financial transactions on their behalf and without their knowledge or consent, including opening credit accounts in their name or taking out loans;

c. impersonating them in written communications, including mail e-mail and/or text messaging;

d. stealing, applying for and/or using benefits intended for the victim;

e. committing illegal acts while impersonating their victim which, in turn, could incriminate the victim and lead to other legal ramifications.

18. Plaintiffs' and Class Members' Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect Plaintiffs' and the Class's PII and PHI. Defendant not only failed to prevent the Data Breach, but after discovering the suspected Data Breach in November 2023, and concluding the severity of it over a year later, Defendant waited until on or around December 20, 2024, to notify state Attorney Generals and affected individuals, such as Plaintiffs and members of the Class.

19. As a result of Defendant's delayed response to the Data Breach, Plaintiffs and the Class had no idea their Private Information had been compromised or that they were, and continue

to be, at significant and imminent risk of identity theft, fraud, and various other forms of personal, social, and financial harm as a result. The risk will remain for their respective lifetimes because of Defendant's negligence.

20. Plaintiffs bring this action on behalf of all persons whose Private Information was compromised in the Data Breach as a direct consequence for Defendant's failure to:

a. adequately protect consumers' PII and PHI entrusted to it;

b. warn its current and former customers, potential customers, and current and former employees of their inadequate information security practices; and

c. effectively monitor their websites and platforms for security vulnerabilities and incidents.

Defendant's conduct amounts to negligence and violates federal and state statutes and guidelines.

21. As a result of the Data Breach, Plaintiffs and the Class suffered ascertainable losses, including but not limited to, a loss of privacy. These injuries include:

a. the invasion of privacy;

b. the compromise, disclosure, theft, and imminent unauthorized use of Plaintiffs' and the Class's Private Information;

c. emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their Private Information;

d. lost or diminished inherent value of Private Information; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII or PHI; lost opportunity costs associated with attempting to mitigate the actual

consequences of the Data Breach, including but not limited to lost time or wages; and

e. the continued and increased risk to their Private Information, which, (a) remains available on the dark web for individuals to access and abuse; and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiffs and the Class.

22. Plaintiffs seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose Private Information was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security practices employed by Defendant.

23. Accordingly, Plaintiffs, on behalf of themselves and the Class, assert claims for negligence, negligence *per se*, unjust enrichment, breach of implied contract, breach of implied contract of good faith and fair dealing, invasion of privacy, breach of confidence, and state consumer protection laws. Plaintiffs seek injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity by law, or any other relief the Court deems just and appropriate.

## II. PARTIES

24. Plaintiff Laquina Brooks is an individual who at relevant times was a citizen and resident of Appleton, Wisconsin, and who became a citizen and resident of Kansas City, Kansas beginning in 2023.

25. Plaintiff Nathaniel Jungwirth is an individual who at all relevant times material hereto has been a citizen and resident of Appleton, Wisconsin.

26. Plaintiff Lori Buscher is an individual who at all relevant times has been a citizen and resident of Oshkosh, Wisconsin.

27. Plaintiff Sherika Neal is an individual who at all relevant times has been a citizen and resident of Los Angeles, California.

28. Plaintiff Melissa Kiesow is an individual who at all relevant times has been a citizen and resident of Elkhorn, Wisconsin.

29. Plaintiff Deja Tulloch is an individual who at all relevant times has been a citizen and resident of Opa-Locka, Florida.

30. Plaintiff Becky Skotzke is an individual who at all relevant times has been a citizen and resident of Larsen, Wisconsin.

31. Defendant Alta Resources Corporation is a corporation organized under the laws of Wisconsin with its headquarters in Neenah, Wisconsin.

## III. JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq*. The amount in controversy exceeds $5 million, exclusive of interest and costs. There are more than 100 members in the proposed Class, and at least one member of the Class is a citizen of a state different from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

33. This Court has personal jurisdiction over Defendant because Defendant's headquarters is located within this District and the Defendant conducts substantial business in this District.

34. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this district, and Defendant resides within this judicial district.

## IV. FACTUAL ALLEGATIONS

### A. Defendant Collects, Uses, and Maintains Private Information in the Ordinary Course of its Business Practices

35. Defendant was founded in 1995 and is a business process outsourcing company that provides integrated services such as customer care, sales, e-commerce, fulfillment, and back-office support to help brands streamline interactions, enhance customer experiences, and achieve cost-effective growth across brand relationships.

36. In the ordinary course of its business practices, Defendant stores, maintains, and uses an individuals' Private Information, including that of Plaintiffs and the Class Members, such as:

a. full names;

b. Social Security numbers;

c. taxpayer identification;

d. government issued identification; and

e. health insurance information.

37. Defendant collected, stored, and maintained the Private Information of its employees and customers, including Plaintiffs and the Class Members on its network. Defendant, however, failed to take reasonable and necessary steps to ensure that its network was secure.

38. By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

39. Defendant understands the importance of securely storing and maintaining Private Information.

40. Defendant's privacy policy provides that, among other things, "[we] are committed to respecting your online privacy and recognizing your need for appropriate protection and management of any Personally Identifiable Information ("PII") you share with us based on applicable data protection laws and regulations. In an era where data privacy is of paramount importance, we understand the significance of safeguarding your personal information and strive to maintain the highest standards of data protection."[2]

41. Plaintiffs and the Class Members did not have control over how Defendant stored and maintained their Private Information. Rather, Plaintiffs were at Defendant's mercy, as Defendant had sole control and authority over its protection of Plaintiffs' and the Class Members' Private Information.

42. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

43. Plaintiffs and other Members of the Class entrusted their Private Information to Defendant.

44. Plaintiffs and Class Members relied on this sophisticated Defendant to keep their Private Information confidential and securely maintained, to use for information for business

[2] Alta Resources Corp., *Introduction and Privacy Statement* https://www.altaresources.com/terms-and-conditions/ (last visited May 12, 2025).

purposes only, and to only make authorized disclosures of this information. Plaintiffs and Class Members demanded security to safeguard their Private Information.

45. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiffs and the Class Members from involuntary disclosure to third parties.

46. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect its consumers' Private Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. Rather, Defendant chose to store Plaintiffs' and the Class Members' Private Information on an unsecure network, leaving their Private Information vulnerable for cybercriminals to take. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' and customers' Private Information.

**B. The Data Breach**

47. In its Notice, Defendant admitted that an unknown person gained unauthorized access to Alta's services between November 17, 2023 and November 18, 2023. During this time, the criminal actors accessed, encrypted, and potentially exfiltrated Plaintiffs' and the Class Members' Private Information.

48. Defendant allegedly then took steps to secure its systems and network including retaining an independent cybersecurity expert to investigate the matter further. Despite these blank assurances, Defendant has not provided any meaningful information to suggest that it has adequately secured its system, and the Private Information stored thereon.

49. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur have not been shared with

regulators or Plaintiffs and Class Members, who retain a vested interest in ensuring that their information remains protected.

50. Moreover, Defendant neglected to timely and appropriately notify all affected individuals of the Data Breach.

51. Defendant sent Plaintiffs and the Class Members Notice of the Data Breach on or around December 20, 2024, *over a year after the Data Breach*.

52. The Notice advised Plaintiffs that the Private Information that could have been accessed included their name, Social Security number, taxpayer identification number, other government issued identification, and health insurance information.

53. Prior to this Data Breach, Plaintiffs had taken steps to protect and safeguard their Private Information including monitoring their Private Information closely. They have not knowingly transmitted their Private Information over unsecured or unencrypted internet connections.

54. Plaintiffs have suffered actual damages and is at imminent, impending, and substantial risk for identity theft and future economic harm due to the highly sensitive nature of the information that was targeted and stolen in the Data Breach. Since learning about the breach, Plaintiffs have taken the *necessary* preventative measures in an effort to mitigate the risk of any potential instances of identity theft of fraud, and to review financial statements and identity theft protection reports to preemptively detect and deter actual instances of identity theft or fraud. Plaintiffs has suffered and continues to suffer emotional anguish and distress, including but not limited to fear and anxiety related to the data theft and compromise of their Private Information. Plaintiffs will continue to spend additional time and incur future economic costs associated with the detection and prevention of identity theft or fraud.

55. Additionally, though Plaintiffs and the Class have an interest in ensuring that their information remains protected, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures taken by Defendant to ensure a data breach does not occur again, have not been shared with regulators, Plaintiffs, or Class Members.

**C. Defendant Knew or Should Have Known of the Substantial Risk of a Data Breach**

56. Defendant had and continues to have obligations created by implied contract, industry standards, common law, and representations made to Plaintiffs and the Class, to keep their Private Information private and confidential and to protect it from unauthorized access, disclosure, or exfiltration.

57. Plaintiffs and the Class provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to employ reasonable care to keep such information confidential and secure from unauthorized access.

58. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[3]

59. The Cybersecurity & Infrastructure Security Agency ("CISA") tracks and shares information about the latest cybersecurity threats throughout the U.S. The CISA warns that cyberattacks, such as malware, phishing, and ransomware attacks are combing increasingly more

---

[3] *FBI, Secret Service Warn of Targeted*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

common forms of attack on businesses, such as Defendant. According to the CISA, these cyberattacks are capable of substantial harm to the U.S. and its citizens.[4]

60. In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[5]

61. In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[6]

62. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[7]

---

[4] CISA, *Cyber Threats and Advisories*, https://www.cisa.gov/topics/cyber-threats-and-advisories.
[5] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Jan. 25, 2022).
[6] ZDNet, *Ransomware mentioned in 1,000+ SEC filings over the past year* (Apr. 30, 2020) (emphasis added), https://www.zdnet.com/article/ransomware-mentioned-in-1000- sec-filings-over-the-past-year/ (last visited Jan. 25, 2022).
[7] U.S. CISA, *Ransomware Guide – September 2020*, https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf (last visited Jan. 25, 2022).

63. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's business, including Defendant.

64. Defendant had and continues to have obligations created by implied contract, industry standards, common law, and representations made to Plaintiffs and the Class, to keep their Private Information private and confidential and to protect it from unauthorized access, disclosure, or exfiltration.

65. Plaintiffs and the Class provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to employ reasonable care to keep such information confidential and secure from unauthorized access.

66. According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take substantial time, money, and patience to resolve.[8] Identity thieves use the stolen Private Information for a variety of crimes, including but not limited to, credit card fraud, telephone or utilities fraud, and bank and finance fraud.[9]

67. The Private Information of Plaintiffs and the Class were accessed and taken by cyber criminals for the very purpose of engaging in illegal and unethical conduct, including crimes involving identity theft, fraud, or to otherwise profit by selling their data to other criminals who

---

[8] *See* Fed. Trade Comm'n, *Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://www.myoccu.org/sites/default/files/pdf/taking-charge-1.pdf.

[9] *Id*. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

purchase Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

68. In light of recent high-profile data breaches at other companies who regularly store Private Information, Defendant knew or should have known that their electronic records would be targeted by cybercriminals.

69. Moreover, Defendant knew, or should have known, the importance of safeguarding the PII of Plaintiffs and the Class, especially their SSN, and the foreseeable consequences that would occur if Defendant's data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class because of a breach.

70. Plaintiffs and the Class now face years of constant monitoring and surveillance of their financial and personal records. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII as a direct result of the Data Breach.

71. The injuries to Plaintiffs and Class were directly and proximately caused by Defendant's own failure to install, implement, or maintain adequate data security measures, software, and other industry best practices for safeguarding the Private Information of Plaintiffs and the Class.

## D. The Data Breach was Preventable

72. By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

73. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[10]

---

[10] *See How to Protect Your Networks from RANSOMWARE*, at 3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

74. To prevent and detect cyberattacks, including the cyberattack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

a. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

b. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configure firewalls to block access to known malicious IP addresses.

e. Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

f. Set anti-virus and anti-malware programs to conduct regular scans automatically.

g. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h. Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

i. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

j. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the “AppData/LocalAppData” folder.

k. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

l. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

m. Execute operating system environments or specific programs in a virtualized environment.

n. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[11]

75. To prevent and detect cyberattacks, including the cyberattack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

(1) **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks. . . .

(2) **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net). . . .

(3) **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

(4) **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it. . . .

(5) **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

(6) **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You

[11] *Id.* at 3-4.

may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

(7) **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic. . . .[12]

76. To prevent and detect cyberattacks, including the cyberattack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Security internet-facing assets**

- Apply latest security updates.
- Use threat and vulnerability management.
- Perform regular audit; Remove privilege credentials.

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise.

**Include IT Professionals in security discussions**

- Ensure collaboration and among [security operations], [security administrators], and [information technology] administrators to configure servers and other endpoints securely.

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.
- Apply principle of least-privilege.

**Monitor for adversarial activities**

- Hunt for brute force attempts.
- Monitor for cleanup of Event logs.
- Analyze logon events.

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection.
- Enable cloud-delivered protection.

---

[12] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited July 17, 2023).

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[13]

77. Given that Defendant was storing the Private Information of other individuals, Defendant could and should have implemented all the above measures to prevent and detect ransomware attacks.

78. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the Private Information of Plaintiffs and Class Members.

79. Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the Private Information of Plaintiffs and Class Members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

80. Defendant's negligence in safeguarding the Private Information of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

81. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

82. Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable

[13] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited July 17, 2023).

measures to ensure that the Private Information of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the Plaintiffs' and Class Members' Private Information was compromised through disclosure to an unknown and unauthorized criminal third party.

83. Upon information and belief, Defendant breached its duties and obligations in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing to comply with industry-standard data security practices; (5) failing to warn Plaintiffs and Class Members of Defendant's inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (8) failing to utilize widely available software able to detect and prevent this type of attack; and (9) otherwise failing to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents

84. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiffs and Class Members are long lasting and severe. Once Private Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

## E. Defendant Failed to Comply with FTC Guidelines

85. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable and adequate data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

86. In 2022, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks' vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[14]

87. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

88. The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

---

[14] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

89. Defendant failed to properly implement basic data security practices, and its failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

90. To prevent and detect cyber-attacks, including the cyber-attack on Defendant's network that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government and FTC, the following measures:

a. implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of malware and how it is delivered;

b. enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing;

c. scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users;

d. configure firewalls to block access to known malicious IP addresses;

e. patch operating systems, software, and firmware on devices using a centralized patch management system;

f. set anti-virus and anti-malware programs to automatically conduct regular scans and/or repairs;

g. create and manage the use of privileged accounts based on the varying level of accessibility using a principle of least privilege: wherein no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary, such as any internal IT employees;

h. configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares;

i. disable macro scripts from Microsoft Office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications;

j. implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common malware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData / LocalAppData folder;

k. consider disabling Remote Desktop protocol (RDP) if it is not being used;

l. use application whitelisting, which only allows systems to execute programs known and permitted by security policy;

m. execute operating system environments or specific programs in a virtualized environment; and

n. categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

91. Indeed, the FTC's interpretation of what technical and administrative cybersecurity safeguards are required under Section 5 of the FTC Act can be seen in the many consent orders and decrees that privacy scholars have termed a common law of cybersecurity safeguards.[15]

92. Defendant was at all times fully aware of its obligation to protect the Private Information of customers, prospective customers and employees. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[15] *See generally* Woodrow Hartzog & Daniel J. Solove, *The Scope and Potential of FTC Data Protection*, 83 GEORGE WASH. L.R. 2230 (2015).

## F. Defendant Failed to Comply with Industry Standards

93. A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices. Best cybersecurity practices that are standard in the trades industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

94. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness. These frameworks are existing and applicable industry standards in Defendant's industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber-attack and causing the Data Breach.

95. The occurrence of the Data Breach is indicative that Defendant failed to adequately implement one or more of the above measures to prevent or circumvent ransomware attacks or other forms of malicious cybercrimes, resulting in the Data Breach.

## G. Private Information Holds Value to Cyber Criminals

96. Businesses, such as Defendant, that store Private Information in their daily course of business are more likely to be targeted by cyber criminals. Credit card, routing, bank account

and other financial numbers are highly sought data targets for hackers, but information such as date of birth, driver's license number, and SSN are even more desirable to cyber criminals; they are not easily destroyed or replaceable and can be easily used to perpetrate acts of identity theft and other types of fraud.

97. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web to obtain Private Information of other unknown individuals. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and banking details have a price range of $50 to $200.[16]

98. A person's SSN, for example, are among the worst kind of PII to have stolen or otherwise compromised because they may be put to a variety of fraudulent uses and are difficult for an individual to change or otherwise repair once it's compromised. The Social Security Administration ("SSA") stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems. [17]

---

[16] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited December 31, 2024).
[17] *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited December 31, 2024).

99. What is more, it is no easy task to change or cancel a stolen or compromised Social Security number as is the case for several of the Class members in this action. An individual cannot obtain a new SSN without significant time, monetary investment, paperwork, and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of an SSN is not permitted and the only forms of remediation happens *after* the first incident of misuse; an individual must show evidence of actual, ongoing fraudulent activity to be eligible to submit an application requesting a new SSN with the SSA.

100. Furthermore, as the SSA warns:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[18]

101. Here, the unauthorized access by cyber criminals left them with the tools to perform the most thorough identity theft—they have obtained all the essential Private Information that can be used to mimic the identity of the victim. The Private Information of Plaintiffs and the Class stolen in the Data Breach constitutes a dream for hackers or cyber criminals and a nightmare for Plaintiffs and the Class. Stolen personal data of Plaintiffs and the Class represents essentially one-stop shopping for identity thieves indefinitely.

---

[18] *Id.*

102. The FTC has released its updated publication on protecting PII for businesses, which includes instructions on protecting PII, properly disposing of PII, understanding network vulnerabilities, implementing policies to correct security problems, using intrusion detection programs, monitoring data traffic, and having in place a response plan.

103. General policy reasons support such an approach. A person whose personal information has been compromised may not see any signs of identity theft for years. According to the United States Government Accountability Office ("GAO") Report to Congressional Requesters:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

104. Companies recognize that PII is a valuable asset and a valuable commodity, but also necessary throughout the typical course of business with consumers. A "cyber black-market" exists in which criminals openly post stolen SSN and other PII on a number of dark web Internet websites. The stolen PII of Plaintiffs and the Class has a high value on both legitimate and black markets.

105. Identity thieves may commit various types of crimes such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, and/or using the victim's information to obtain a fraudulent tax refund or fraudulent unemployment benefits. The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.

---

[19] *See* Government Accountability Office, *Personal Information*, (June 2007) at 29, https://www.gao.gov/assets/gao-07-737.pdf.

106. As noted above, the disclosure of Social Security numbers in particular poses a significant risk. Criminals can, for example, use SSNs to create false bank accounts or file fraudulent tax returns or other tax related forms and documents using an alias of their victim. Class members whose SSN have been compromised in the Data Breach now face a real, present, imminent, and substantial risk of identity theft and other problems associated with the disclosure of their SSN and will need to monitor their credit and tax filings for an indefinite duration.

107. The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of traditional identity theft.[33] Medical Identity Theft is especially nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (*e.g.*, a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[20]

108. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because those victims can file disputes, cancel, or close credit and debit cards and/or accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not nearly impossible, to change.

---

[20] AARP, *Medical Identity Theft* (Feb. 15, 2019), https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last updated Mar. 25, 2022).

109. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[21]

110. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police or other emergency medical services. An individual may not know that their driver's license was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud, or until the individual attempts to lawfully apply for unemployment and is denied benefits (due to the prior, fraudulent application and award of benefits).

**H. Plaintiffs' and Class Members' Damages**

111. Defendant has failed to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and the Class's Private Information other than offering twelve (12) months of temporary, non-automatic credit-monitoring services to individuals involved in the Data Breach.

112. Plaintiffs and the Class have been damaged by the compromise of their Private Information in the Data Breach.

113. Plaintiffs and the Class presently face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

114. Plaintiffs and the Class have been, and currently face substantial risk of being targeted now and in the future, to phishing, data intrusion, and other illegality based on their Private

---

[21] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers* (Feb. 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

Information being compromised in the Data Breach as potential fraudsters could use the information garnered to target such schemes more effectively against Plaintiffs and the Class.

115. Plaintiffs and the Class may also incur out-of-pocket costs for implementing protective measures such as purchasing credit monitoring fees, credit report fees, credit freeze fees, and other similar costs directly or indirectly related to the Data Breach.

116. Plaintiffs and the Class also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in data breach cases.

117. Plaintiffs and the Class have spent and will continue to spend significant amounts of uncompensated time to monitor their financial accounts, medical accounts, sensitive information, credit score, and records for misuse.

118. Plaintiffs and the Class have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach

119. Moreover, Plaintiffs and the Class have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of proper and adequate security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password protected.

120. Further, as a result of Defendant's conduct, Plaintiffs and the Class are forced to live with the anxiety and fear that their Private Information—which contains the most intimate

details about a person's life—may be disclosed to the entire world, whether physically or virtually, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

121. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and the Class have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm because of the Data Breach.

## I. Plaintiffs' Experiences

### Plaintiff Laquina Brooks

122. Plaintiff Laquina Brooks is a former employee of Defendant.

123. As a condition of obtaining services/employment from Defendant, she was required to provide her Private Information to Defendant.

124. On information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Brooks' Private Information in its system.

125. Plaintiff Brooks is very careful about sharing her sensitive Private Information. Plaintiff Brooks stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Brooks would not have entrusted her Private Information to Defendant had she known of Defendant's lax data security practices.

126. Plaintiff Brooks received the Notice from Defendant. According to the Notice, Plaintiff Brooks' Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

127. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Brooks to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free

credit reports for suspicious activity and to detect errors[,]" Plaintiff Brooks made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff Brooks has spent significant time dealing with the Data Breach–valuable time Plaintiff Brooks otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

128. Plaintiff Brooks has suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails which, upon information and belief, was caused by the Data Breach.

129. Additionally, Plaintiff Brooks received a $75 fraudulent charge to her debit card, an individual attempted to open a debit card in Plaintiff's name, and an individual fraudulently filed for unemployment in Plaintiff's name.

130. Plaintiff Brooks suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

131. The Data Breach has caused Plaintiff Brooks to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

132. As a result of the Data Breach, Plaintiff Brooks anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

133. As a result of the Data Breach, Plaintiff Brooks is at a present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

134. Upon information and belief, Defendant continues to store and maintain Plaintiff Brooks' Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Brooks' Private Information. As a result, Plaintiff Brooks' Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

135. Plaintiff Brooks has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Nathaniel Jungwirth**

136. Plaintiff Nathan Jungwirth does not know how Defendant came to obtain his Private Information but believes that he worked for a company that used Defendant's services.

137. As a condition of obtaining services from Defendant, he was required to provide his Private Information to Defendant.

138. On information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Jungwirth's Private Information in its system.

139. Plaintiff Jungwirth is very careful about sharing his sensitive Private Information. Plaintiff Jungwirth stores any documents containing his Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Jungwirth would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security practices.

140. Plaintiff Jungwirth received the Notice from Defendant. According to the Notice, Plaintiff Jungwirth's Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

141. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Jungwirth to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free credit reports for suspicious activity and to detect errors[,]"Plaintiff Jungwirth made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff Jungwirth has spent significant time dealing with the Data Breach–valuable time Plaintiff Jungwirth otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

142. Plaintiff Jungwirth suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the

Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

143. The Data Breach has caused Plaintiff Jungwirth to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed him of key details about the Data Breach's occurrence.

144. As a result of the Data Breach, Plaintiff Jungwirth anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

145. As a result of the Data Breach, Plaintiff Jungwirth is at a present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

146. Upon information and belief, Defendant continues to store and maintain Plaintiff Jungwirth's Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Jungwirth's Private Information. As a result, Plaintiff Jungwirth's Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

147. Plaintiff Jungwirth has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Lori Buscher**

148. Plaintiff Lori Buscher is a former employee of Defendant.

149. As a condition of obtaining employment from Defendant, she was required to provide her Private Information to Defendant.

150. On information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Buscher's Private Information in its system.

151. Plaintiff Buscher is very careful about sharing her sensitive Private Information. Plaintiff Buscher stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Buscher would not have entrusted her Private Information to Defendant had she known of Defendant's lax data security practices.

152. Plaintiff Buscher received the Notice from Defendant. According to the Notice, Plaintiff Buscher's Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

153. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Buscher to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free credit reports for suspicious activity and to detect errors[,]" Plaintiff Buscher made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff Buscher has spent several hours dealing with the Data

Breach—valuable time Plaintiff Buscher otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

154. Additionally, Plaintiff Buscher has experienced an increase in unsolicited phone calls, emails, and text messages, which, upon information and belief, was caused by the Data Breach.

155. Plaintiff Buscher suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

156. The Data Breach has caused Plaintiff Buscher to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

157. As a result of the Data Breach, Plaintiff Buscher anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

158. As a result of the Data Breach, Plaintiff Buscher is at a present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

159. Upon information and belief, Defendant continues to store and maintain Plaintiff Buscher's Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Buscher's Private Information. As a result, Plaintiff Buscher's Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

160. Plaintiff Buscher has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Sherika Neal**

161. Plaintiff Sherika Neal does not know how Defendant came to obtain her Private Information, but believes that she worked for a company that used Defendant's services.

162. As a condition of obtaining services from Defendant, Plaintiff Neal was required to provide her Private Information to Defendant.

163. Upon information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Neal's Private Information in its system.

164. Plaintiff Neal is very careful about sharing her sensitive Private Information. Plaintiff Neal stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Neal would not have entrusted her Private Information to Defendant had she known of Defendant's lax data security practices.

165. Plaintiff Neal received the Notice from Defendant. According to the Notice, Plaintiff Neal's Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

166. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Neal to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free credit reports for suspicious activity and to detect errors[,]" Plaintiff Neal made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach and contacting credit bureaus to place freezes on her accounts Plaintiff Neal has numerous hours dealing with the Data Breach—valuable time Plaintiff Neal otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

167. Additionally, Plaintiff Neal further suffered actual injury in the form of her Private Information being disseminated on the dark web. Plaintiff Neal additionally suffered actual injury in the form of an unauthorized party fraudulently opening a Capitol One account, falsely under her name, in or about September 2024. Finally, Plaintiff Neal suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

168. Plaintiff Neal suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with

attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

169. The Data Breach has caused Plaintiff Neal to suffer fear, anxiety, and stress, which have been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

170. As a result of the Data Breach, Plaintiff Neal anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

171. As a result of the Data Breach, Plaintiff Neal is at a present risk, and will continue to be at an increased risk, of identity theft and fraud for years to come.

172. Upon information and belief, Defendant continues to store and maintain Plaintiff Neal's Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Neal's Private Information. As a result, Plaintiff Neal's Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

173. Plaintiff Neal has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Melissa Kiesow**

174. Plaintiff Melissa Kiesow is a former employee of Defendant.

175. As a condition of obtaining employment from Defendant, she was required to provide her Private Information to Defendant.

176. On information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Kiesow's Private Information in its system.

177. Plaintiff Kiesow is very careful about sharing her sensitive Private Information. Plaintiff Kiesow stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Kiesow would not have entrusted her Private Information to Defendant had she known of Defendant's lax data security practices.

178. Plaintiff Kiesow received the Notice from Defendant. According to the Notice, Plaintiff Kiesow's Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

179. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Kiesow to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free credit reports for suspicious activity and to detect errors[,]" Plaintiff Kiesow made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff Kiesow has spent significant time dealing with the Data Breach–valuable time Plaintiff Kiesow otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

180. Additionally, Plaintiff Kiesow has experienced a marked increase in spam texts and emails which, upon information and belief, was caused by the Data Breach.

181. Plaintiff Kiesow suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

182. The Data Breach has caused Plaintiff Kiesow to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

183. As a result of the Data Breach, Plaintiff Kiesow anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

184. As a result of the Data Breach, Plaintiff Kiesow is at a present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

185. Upon information and belief, Defendant continues to store and maintain Plaintiff Kiesow's Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to

Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Kiesow's Private Information. As a result, Plaintiff Kiesow's Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

186. Plaintiff Kiesow has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Deja Tulloch**

187. Plaintiff Deja Tulloch does not know how Defendant came to obtain his Private Information but believes that he worked for a company that used Defendant's services.

188. As a condition of obtaining service from Defendant, he was required to provide his Private Information to Defendant.

189. On information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Tulloch's Private Information in its system.

190. Plaintiff Tulloch is very careful about sharing his sensitive Private Information. Plaintiff Tulloch stores any documents containing his Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Tulloch would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security practices.

191. Plaintiff Tulloch received the Notice from Defendant. According to the Notice, Plaintiff Tulloch's Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

192. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Tulloch to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free credit reports for suspicious activity and to detect errors[,]" Plaintiff Tulloch made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff Tulloch has spent approximately 20 hours dealing with the Data Breach—valuable time Plaintiff Tulloch otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

193. Additionally, Plaintiff began receiving an increased amount of spam phone calls and emails, including text message that contain a phishing link, and also experienced unauthorized persons opening bank accounts and requesting loans in his name which, upon information and belief, was caused by the Data Breach.

194. Plaintiff Tulloch suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

195. The Data Breach has caused Plaintiff Tulloch to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed his of key details about the Data Breach's occurrence.

196. As a result of the Data Breach, Plaintiff Tulloch anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

197. As a result of the Data Breach, Plaintiff Tulloch is at a present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

198. Upon information and belief, Defendant continues to store and maintain Plaintiff Tulloch's Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Tulloch's Private Information. As a result, Plaintiff Tulloch's Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

199. Plaintiff Tulloch has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff Becky Skotzke**

200. Plaintiff Becky Skotzke is a former employee of Defendant.

201. As a condition of obtaining employment from Defendant, she was required to provide her Private Information to Defendant.

202. On information and belief, at the time of the Data Breach—between November 17 and 18, 2023—Defendant maintained Plaintiff Skotzke's Private Information in its system.

203. Plaintiff Skotzke is very careful about sharing her sensitive Private Information. Plaintiff Skotzke stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Skotzke would not have entrusted her Private Information to Defendant had she known of Defendant's lax data security practices.

204. Plaintiff Skotzke received the Notice from Defendant. According to the Notice, Plaintiff Skotzke's Private Information was improperly accessed and obtained by unauthorized third parties in the Data Breach.

205. As a result of the Data Breach, and at the direction of Defendant's Notice, which instructs Plaintiff Skotzke to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefit statements, and monitoring your free credit reports for suspicious activity and to detect errors[,]" Plaintiff Skotzke made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff Skotzke has spent approximately significant time dealing with the Data Breach—valuable time Plaintiff Skotzke otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

206. Plaintiff Skotzke suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the

Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

207. The Data Breach has caused Plaintiff Skotzke to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

208. As a result of the Data Breach, Plaintiff Skotzke anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

209. As a result of the Data Breach, Plaintiff Skotzke is at a present risk and will continue to be at an increased risk of identity theft and fraud for years to come.

210. Upon information and belief, Defendant continues to store and maintain Plaintiff Skotzke's Private Information on its inadequately protected network. This is especially concerning given the Data Breach as cybercriminals now know exactly how to gain unauthorized access to Defendant's system. There is nothing stopping other cybercriminals from hacking Defendant's system again and gaining further access to Plaintiff Skotzke's Private Information. As a result, Plaintiff Skotzke's Private Information remains vulnerable and at a continued risk of additional unauthorized exfiltration.

211. Plaintiff Skotzke has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V. CLASS ACTION ALLEGATIONS

212. Plaintiffs bring this nationwide class action according to Federal Rules of Civil Procedure, Rules 23(b)(2), 23(b)(3), and 23(c)(4).

213. The nationwide Class that Plaintiffs seeks to represent is defined as follows:

> All persons residing in the United States whose Private Information was compromised during the Data Breach that is the subject of the Notice of Data Breach published by Defendant on or about December 20, 2024 (the "Class").

214. Plaintiff Neal also seeks to represent a California Subclass, defined as follows:

> All individuals in the State of California whose Private Information was compromised in the Data Breach that is the subject of the Notice of Data Breach published by Defendant on or about December 20, 2024 (the "California Subclass").

215. Excluded from the Class are: (i) Defendant and its employees, officers, directors, affiliates, parents, subsidiaries, and any entity in which Defendant has a whole or partial ownership of financial interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any counsel and their respective staff appearing in this matter; and (iv) all judges assigned to hear any aspect of this litigation, their immediate family members, and their respective court staff.

216. Plaintiffs reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

217. **Numerosity**. The Class is so numerous that joinder of all members is impracticable. The Class includes a minimum of 37,363 individuals whose personal data was compromised by the Data Breach. The exact number of Class members is in the possession and control of Defendant

and will be ascertainable through discovery, but there is likely thousands of individuals' Private Information that was involved in the Data Breach.

218. **Commonality**. There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any questions that may affect only individual Class members, including, without limitation:

a. whether Defendant unlawfully maintained, lost or disclosed Plaintiffs' and the Class's Private Information;

b. whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. whether Defendant owed a duty to Class to safeguard their Private Information;

f. whether Defendant breached duties to Class to safeguard their Private Information;

g. whether cyber criminals obtained Class's Private Information in the Data Breach;

h. whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. whether Defendant owed a duty to provide Plaintiffs and Class timely notice of this Data Breach, and whether Defendant breached that duty;

j. Whether Defendant's conduct violated the FTCA, HIPAA, and/or the Consumer Protection Acts invoked herein;

k. whether Plaintiffs and Class suffered legally cognizable damages as a result of Defendant's misconduct;

l. whether Defendant's conduct was negligent;

m. whether Defendant's conduct was *per se* negligent;

n. whether Defendant was unjustly enriched;

o. whether Defendant's conduct violated federal law;

p. whether Defendant's conduct violated state law; and

q. whether Plaintiffs and Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

219. **Typicality**. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all proposed Class members, had their Private Information compromised, breached, or otherwise stolen in the Data Breach. Plaintiffs and the Class were injured through the uniform misconduct of Defendant, described throughout this Complaint, and assert the same claims for relief.

220. **Adequacy**. Plaintiffs and counsel will fairly and adequately protect the interests of Plaintiffs and the proposed Class. Plaintiffs retained counsel who are experienced in Class action and complex litigation, particularly those involving Data Breach as is at issue in this class action complaint. Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of other Class members.

221. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Plaintiffs and the Class have been harmed by Defendant's wrongful conduct and/or action. Litigating this action as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct and/or inaction. Plaintiffs know of no

difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

222. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A), in that the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action conserves judicial resources and the parties' resources and protects the rights of each member of the Class. Specifically, injunctive relief could be entered in multiple cases, but the ordered relief may vary, causing Defendant to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which to comply. Class action status is also warranted because prosecution of separate actions by Class members would create the risk of adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

223. Class certification, therefore, is appropriate under Rule 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

224. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. whether Defendant owed its legal duty or obligation to Plaintiffs and the Class to exercise due care in collecting, storing, using, safeguarding, or otherwise maintaining their Private Information;

b. whether Defendant breached its legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, using, safeguarding, or otherwise maintaining their Private Information;

c. whether Defendant failed to comply with its own policies or procedures and applicable laws, regulations, and industry standards relating to data security;

d. whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e. whether Plaintiffs and the Class are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## VI. CAUSES OF ACTION

### COUNT I
### Negligence
### (On behalf of Plaintiffs and the Class)

225. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

226. Plaintiffs and the Class entrusted Defendant with their Private Information.

227. Plaintiffs and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and not disclose their Private Information to unauthorized third parties.

228. Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care in obtaining, using, maintaining, and protecting their Private Information from unauthorized third parties.

229. The legal duties owed by Defendant to Plaintiffs and the Class include, but are not limited to the following:

a. to exercise reasonable care in procuring, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiffs and the Class in Defendant's possession;

b. to protect Private Information of Plaintiffs and the Class in Defendant's possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

c. to implement processes and software to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiffs and Class of the Data Breach.

230. Defendant's duty to use reasonable data security measures also arose because of the foreseeability of data breaches and the harms they cause, because of the special relationship with Plaintiffs and the Class, and under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (the "FTC Act"), which prohibits "unfair . . . practices in or affecting commerce," including, as interested, and enforced by the Federal Trade Commission, the unfair practices by companies such as Defendant of failing to use reasonable measures to protect Private Information.

231. Various FTC publications and data security breach orders further form the basis of Defendant's duty. Plaintiffs and Class are consumers under the FTC Act. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and by not complying with industry standards.

232. Defendant breached its duties to Plaintiffs and the Class. Defendant knew or should have known the risks of collecting and storing Private Information and the importance of maintaining secure systems, especially in light of the fact that data breaches have recently been prevalent.

233. Defendant knew or should have known that its security practices did not adequately safeguard the Private Information of Plaintiffs and the Class.

234. Through Defendant's acts and omissions described in this Complaint, including Defendant's failure to provide adequate security measures and its failure to protect the Private Information of Plaintiffs and the Class from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, and misused, Defendant unlawfully breached its duty to use reasonable care to

adequately protect and secure the Private Information of Plaintiffs and the Class during the period it was within Defendant's possession and control.

235. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

236. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs and the class.

237. Defendant's own conduct created a foreseeable risk of harm to an individual, including Plaintiffs and the Class. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for safekeeping of the Private Information of Plaintiffs and the Class, including basic encryption techniques freely available to Defendant.

238. Defendant was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

239. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiffs and the Class.

240. Defendant breached the duties it owes to Plaintiffs and Class in several ways, including:

a. failing to implement adequate security systems, protocols, and practices sufficient to protect employees' and customers' Private Information and thereby creating a foreseeable risk of harm;

b. failing to comply with the minimum industry data security standards during the period of the Data Breach;

c. failing to act despite knowing or having reason to know that its systems were vulnerable to attack; and

d. failing to timely and accurately disclose to customers and employees that their Private Information had been improperly acquired or accessed and was potentially available for sale to criminals on the dark web.

241. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiffs and Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The Private Information of Plaintiffs and the Class was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

242. Due to Defendant's misconduct, Plaintiffs and the Class are entitled to indefinite credit monitoring at a minimum. The Private Information taken in the Data Breach can be used for identity theft and other types of financial fraud against Plaintiffs and the Class.

243. Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358 per year. To date, Defendant has only offered twelve (12) months of temporary, non-automatic credit-monitoring services.

244. As a result of Defendant's negligence, Plaintiffs and Class suffered injuries that include:

a. the lost or diminished value of Private Information;

b. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

c. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account;

d. the continued risk to their Private Information, which may remain for sale on the dark web and is in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession;

e. future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class, including ongoing credit monitoring.

245. These injuries were reasonably foreseeable given the history and uptick of data security breaches of this nature within the defendant's sector. The injury and harm that Plaintiffs and the Class suffered was the direct and proximate result of Defendant's negligent conduct.

**COUNT II**
**Negligence *Per Se***
**(On behalf of Plaintiffs and the Class)**

246. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

247. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

248. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and comply with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable harm.

249. Indeed, Section 5 of the FTC Act provides a clear standard of care that Defendant breached. This clear standard of care comes from FTC guidance publications as well as the many consent orders and decrees that it has published after data breach investigations—consent orders

and decrees that establish a remarkably consistent expectation of the safeguards companies should employ.

250. Defendant's violations of Section 5 of the FTC Act constitutes negligence *per se*.

251. Plaintiffs and the Class are within the class of persons that the FTCA is intended to protect.

252. The harm that occurred as a result of the Data Breach is the type of harm the FTCA is intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

253. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual instances of identity theft or fraud; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud, identity theft; and/or other various forms of fraud (v) costs associated with placing or removing freezes on credit reports; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of its current and former employees and customers in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information

compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

254. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

255. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Class)**

256. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

257. Plaintiffs bring this claim in the alternative pursuant to Fed. R. Civ. P. 8.

258. Plaintiffs and the Class conferred a monetary benefit to Defendant by providing Defendant with their valuable Private Information, which Defendant knowingly used or retained in the course of its business.

259. Defendant benefited from receiving Plaintiffs' and the Class members' Private Information by its ability to retain and use that information for its own financial business benefit. Defendant understood this benefit and accepted the benefit knowingly.

260. Defendant also understood and appreciated that the Private Information of Plaintiffs and the Class was private and confidential to them, and that its value depended upon Defendant maintaining the privacy and confidentiality of that Private Information.

261. Plaintiffs and the Class conferred a monetary benefit upon Defendant in the form of monies paid to Defendant for services.

262. The monies paid to Defendant for services involving Plaintiffs and the Class Private Information were to be used by Defendant, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

263. Defendant also understood that Plaintiffs' and the Class's Private Information was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that Private Information.

264. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiffs and the Class by utilizing cheaper, ineffective security measures. Plaintiffs and the Class, on the other hand, suffered a direct and proximate result of Defendant's failure to provide the requisite security.

265. But for Defendant's willingness and commitment to maintain privacy and confidentiality, that Private Information would not have been transferred to and entrusted with Defendant. Indeed, if Defendant had informed its customers that Defendant's data and cyber security measures were inadequate, Defendant would not have been permitted to continue to operate in that fashion by regulators, its shareholders, and its consumers.

266. As a result of Defendant's wrongful conduct, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class. Defendant continues to benefit and profit from their retention and use of the Private Information while its value to Plaintiffs and the Class has been diminished.

267. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged in this complaint, including compiling, using, and retaining Plaintiffs

and the Class's Private Information, while at the same time failing to maintain that information securely from intrusion and theft by cyber criminals, hackers, and identity thieves.

268. Plaintiffs and the Class have no adequate remedy at law.

269. Under principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and the Class because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiffs and the Class paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

270. Defendant acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

271. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm. Defendant should be completed to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Class, proceeds that they unjustly received from them.

272. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered, and will continue to suffer, ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss an economic harm; actual identify theft crimes, fraud, and abuse resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports;

expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic time that the Plaintiffs and Class have not been compensated for.

273. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm.

## COUNT IV
**Breach of Implied Contract**
**(On behalf of Plaintiffs and the Class)**

274. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

275. Plaintiffs and the Class entrusted their Private Information with Defendant. In doing so, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached, compromised, or stolen.

276. The statements in Defendant's Privacy Policy described herein support the existence of an implied contract.

277. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

278. Defendant breached the implied contract with Plaintiffs and the Class by failing to safeguard and protect their Private Information, by failing to delete the Private Information of Plaintiffs and the Class once their relationship ended, and by failing to provide timely and accurate notice to them that the Private Information was compromised as a result of the Data Breach.

279. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered, and will continue to suffer, ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and

economic harm; actual identify theft crimes, fraud, and abuse resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic time that the Plaintiffs and Class have not been compensated for.

280. As a direct and proximate result of the Defendant's above-described breach of implied contract, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT VI
## Breach of the Implied Covenant of Good Faith and Fair Dealing
## (On behalf of Plaintiffs and the Class)

281. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

282. Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

283. Plaintiffs and the class have complied with and performed all conditions of their contracts with Defendant.

284. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Plaintiffs and Class Members' Private Information, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security's vulnerabilities of the systems that were exploited in the Data Breach.

285. Defendant acted in bad faith and/or with malicious motive in denying Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT VII**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

286. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

287. Plaintiffs and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

288. Defendant owed a duty to Plaintiffs and Class Member to keep their Private Information confidential.

289. Defendant affirmatively and recklessly disclosed Plaintiffs' and Class Members' Private Information to unauthorized third parties.

290. The unauthorized disclosure and/or acquisition (*i.e.*, theft) by a third party of Plaintiffs' and Class Members' Private Information is highly offensive to a reasonable person.

291. Defendant's reckless failure to protect Plaintiffs' and Class Members' Private Information constitutes an intentional interference with Plaintiffs' and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

292. Indeed, the definition of intent is met under Section 8A of the Restatement (Second) of Torts because Defendant was substantially certain that its choice to forego the appropriate cybersecurity safeguards would lead to a data breach—especially because of the ubiquitous nature of data breaches.

293. Moreover, Defendant's conduct amounts to the public disclosure of private facts in that the disclosure was to cybercriminals and identity thieves who are in a special relationship with Plaintiffs and the Class in that they are the exact individuals from whom reasonable cybersecurity measures are intended to protect Plaintiffs and the Class.

294. In failing to protect Plaintiffs' and Class Members' Private Information, Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

295. Because Defendant failed to properly safeguard Plaintiffs' and Class Members' Private Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

296. Defendant knowingly did not notify Plaintiffs and Class Members in a timely fashion about the Data Breach.

297. As a proximate result of Defendant's acts and omissions, Plaintiffs' and Class Members' sensitive Private Information was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

298. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their Private Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

299. Plaintiffs and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard Plaintiffs' and the Class's Private Information.

300. Plaintiffs, on behalf of themselves and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiffs' and Class Members' Private Information.

301. Plaintiffs, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT VIII
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Class)**

302. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

303. Defendant was fully aware of the confidential nature of Plaintiffs' and Class Members' Private Information that it was provided.

304. As alleged herein and above, Defendant's relationship with Plaintiffs and the Class was governed by promises and expectations that Plaintiffs and Class Members' Private Information would be collected, stored, and protected in confidence, and would not be accessed by, acquired by appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

305. Plaintiffs and Class Members provided their respective Private Information to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

306. Plaintiffs and Class Members provided their Private Information to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect their Private Information from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

307. Defendant voluntarily received, in confidence, Plaintiffs and Class Members' Private Information with the understanding that the Private Information would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

308. Due to Defendant's failure to prevent, detect, and avoid the Data Breach from occurring by, inter alia, not following best information security practices to secure Plaintiffs' and Class Members' Private Information, Plaintiffs' and Class Members' Private Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

309. As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and Class Members have suffered damages as alleged herein.

310. But for Defendant's failure to maintain and protect Plaintiffs' and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the misuse of Plaintiffs and Class Members' Private Information, as well as the resulting damages.

311. The injury and harm Plaintiffs and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Plaintiff and Class Members' Private Information. Defendant knew its data systems and protocols for accepting and securing Plaintiff and Class Members' Private Information had security and other vulnerabilities that placed Plaintiffs' and Class Members' Private Information in jeopardy.

312. As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and Class Members have suffered and will suffer injury, as alleged herein, including but not limited to (a) actual identity theft; (b) the compromise, publication, and/or theft of their Private Information; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Class Members' Private Information in their continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (g) the diminished value of Plaintiffs and Class Members' PII.

## **Count IX**
## **Violation of the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*, § 1798.150(a) (On Behalf of Plaintiff Neal and the California Subclass)**

313. Plaintiff Neal and the Class re-allege and incorporate all foregoing paragraphs.

314. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

315. Defendant is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

316. Plaintiff Neal and California Subclass Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

317. The Private Information of Plaintiff Neal and the California Subclass Members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information Defendant collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used

to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

318. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the California Subclass Members' Private Information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the Private Information of Plaintiff Neal and the California Subclass Members. Specifically, Defendant subjected Plaintiff Neal's and the California Subclass Members' nonencrypted and nonredacted Private Information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

319. As a direct and proximate result of Defendant's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff Neal's and California Subclass Members' Private Information included exfiltration, theft, or disclosure through Defendant's servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

320. As a direct and proximate result of Defendant's acts, Plaintiff Neal and the California Subclass Members were injured and lost money or property, including but not limited to the loss of Plaintiff Neal's and California Subclass Members' legally protected interest in the

confidentiality and privacy of their Private Information, stress, fear, and anxiety, nominal damages, and additional losses described above.

321. Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages."

322. On January 2, 2025, Plaintiff Neal's counsel sent a CCPA notice letter to Defendant's registered service agents via certified mail. As of the date of this filing, Defendant has not cured the effects of the Data Breach, which would require retrieving the Private Information and securing the Private Information from continuing and future use, within 30 days of delivery of such CCPA notice letter. Thus, Plaintiff Neal seeks actual damages and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach on behalf of the California Subclass as authorized by the CCPA.

323. Accordingly, Plaintiff Neal and the California Subclass Members by way of this Complaint seek actual pecuniary damages suffered as a result of Defendant's violations described herein.

## COUNT X
**Violations of Wisconsin's Deceptive Trade Practices Act**
**Wis. Stat. § 100.18**
**(On behalf of Plaintiffs and the Class)**

324. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

325. Plaintiffs are authorized to bring this claim under Wisconsin Statute Section 100.18, which prohibits any "statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18.

326. As described in this Complaint, Defendant has engaged in the following unfair or deceptive acts or practices in violation of the Wisconsin Deceptive Trade Practices Act:

Substituting "services of inferior value or quality for the property or services which must be purchased." Defendant's deceptive practices include, but are not limited to:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information, including but not limited to duties imposed by the FTC Act, which were direct and proximate causes of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class members' Private Information;

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information; and

h. Failing to promptly and adequately notify Plaintiffs and the Class that their Private Information was accessed by unauthorized persons in the Data Breach.

327. Defendant is engaged in, and its acts and omissions affected, trade and commerce. Defendant's relevant acts, practices, and omissions complained of in this action were done in the course of Defendant's business of marketing, offering for sale, and selling goods and services to consumers throughout the United States.

328. Defendant had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of Plaintiffs' and Class Members'

Private Information. This exclusive knowledge includes, but is not limited to, information that Defendant received through internal and other non-public audits and reviews that concluded that Defendant's security policies were substandard and deficient, and that Plaintiffs' and Class Members' Private Information and other Defendant data was vulnerable.

329. Defendant had exclusive knowledge about the extent of the Data Breach, including during the days, weeks, and months following the Data Breach.

330. Defendant also had exclusive knowledge about the length of time that it maintained individuals' Private Information after they stopped using services that necessitated the transfer of that Private Information to Defendant.

331. Defendant failed to disclose, and actively concealed, the material information it had regarding Defendant's deficient security policies and practices and regarding the security of the sensitive Private Information. For example, even though Defendant has long known, through internal audits and otherwise, that its security policies and practices were substandard and deficient, and that Plaintiffs' and Class Members' Private Information was vulnerable as a result, Defendant failed to disclose this information to, and actively concealed this information from, Plaintiffs, Class Members and the public. Defendant also did not disclose, and actively concealed, information regarding the extensive length of time that it maintains Private Information and other records.

332. Likewise, during the days and weeks following the Data Breach, Defendant failed to disclose, and actively concealed, information that it had regarding the extent and nature of the Data Breach.

333. Defendant had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information and it actively concealed the information.

334. Defendant's representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendant's data security and its ability to protect the confidentiality of current and former employees', contractors', customers', and others' Private Information.

335. Had Defendant disclosed to Plaintiffs and the Class that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business without adopting reasonable data security measures and complying with the law. Instead, Defendant received, maintained, and compiled Plaintiffs' and Class members' Private Information without advising that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their Private Information.

336. Accordingly, Plaintiffs and Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

337. Defendant's practices were also contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws such as the FTC Act.

338. The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or to competition and are not injuries that Plaintiffs and the Class should have reasonably avoided.

339. The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiffs and the Class as a direct result of Defendant's deceptive acts and practices as set forth herein include, without limitation: (i) Plaintiffs experiencing an increase in spam calls, texts, and/or emails; (ii) invasion of privacy; (iii) theft of their Private Information; (iv) lost or diminished value of Private Information; (v) lost time and opportunity costs associated with

attempting to mitigate the actual consequences of the Data Breach; (vi) loss of benefit of the bargain; (vii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Private Information from a foreseeable and preventable cyber-attack.

340. Plaintiffs and the Class seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their Private Information without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

**COUNT XI**
**Declaratory Judgment and Injunctive Relief**
**(On behalf of Plaintiffs and the Class)**

341. Plaintiffs and the Class re-allege and incorporate all foregoing paragraphs.

342. Plaintiffs pursue this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

343. Defendant owes a duty of care to Plaintiffs and the Class that require it to adequately secure Plaintiffs' and the Class's Private Information.

344. Defendant failed to fulfill their duty of care to safeguard Plaintiffs' and the Class's Private Information.

345. Plaintiffs and the Class are at risk of harm due to the exposure of their Private Information and Defendant's failure to address the security failings that lead to such exposure.

346. Plaintiffs, therefore, seeks a declaration that (1) Defendant's existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' Private Information, and (2) to comply with their explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

c. Auditing, testing, and training its security personnel regarding any new or modified procedures;

d. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

e. Conducting regular database scanning and security checks;

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g. Purchasing credit monitoring services for Plaintiffs and the Class for a period of ten years; and

h. Meaningfully educating Plaintiffs and the Class about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, requests judgment against Defendant and that the Court grant the following:

1. For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

2. For an order enjoining Defendant from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of the Private Information belonging to Plaintiffs and the Class;

3. For injunctive relief requiring Defendant to:

    a. engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b. engage third-party security auditors and internal personnel to run automated security monitoring;

    c. audit, test, and train its security personnel regarding any new or modified procedures;

    d. segment their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

    e. conduct regular database scanning and security checks;

    f. routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    g. purchase credit monitoring services for Plaintiffs and the Class for a period of ten years; and

    h. meaningfully educate Plaintiffs and the Class about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves; and

4. an order instructing Defendant to purchase or provide funds for credit monitoring services for Plaintiffs and all Class members;

5. an award of compensatory, statutory, nominal and punitive damages, in an amount to be determined at trial;

6. an award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

7. an award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law; and

8. any and all such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand this matter be tried before a jury.

Dated: May 12, 2025

Respectfully submitted,

*/s/ Nickolas J. Hagman*
Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100 Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

***Interim Co-Lead Class Counsel***

## CERTIFICATE OF SERVICE

I, Nickolas J. Hagman, an attorney, hereby certify that on May 12, 2025, service of the foregoing ***Consolidated Class Action Complaint*** was accomplished through the Court's electronic filing system.

*s/ Nickolas J. Hagman*
Nickolas J. Hagman

# EXHIBIT 1

By providing this notice, Alta does not waive any rights or defenses regarding the applicability of Maine law, the applicability of the Maine data event notification statute, or personal jurisdiction.

## Nature of the Data Event

On or about November 18, 2023, Alta discovered encrypted files on certain computer systems. Alta promptly took steps to secure out systems and launched an investigation with the assistance of third-party forensic specialists to determine the nature and scope of the incident. Our investigation determined that there was unauthorized access to certain Alta servers between November 17, 2023 and November 18, 2023. Alta conducted a thorough review to identify the specific types of personal information potentially impacted and to whom such information relates. Alta recently completed a thorough and time consuming review of the impacted data and determined that the information potentially accessible. Alta is providing notice to the identified individuals.

The information that could have been subject to unauthorized access includes name, Social Security number, financial account information, health insurance information, taxpayer identification number, health & medical information, and other government issued identification number.

## Notice to Maine Residents

On December 20, 2024, Alta provided written notice of this incident to nineteen (19) Maine residents. Written notice is being provided in substantially the same form as the letter attached here as ***Exhibit A***.

## Other Steps Taken and To Be Taken

Upon discovering the event, Alta moved quickly to investigate and respond to the incident, assess the security of Alta systems, and identify potentially affected individuals. Further, Alta notified federal law enforcement regarding the event. Alta is also working to implement additional safeguards and training to its employees. Alta is providing access to credit monitoring services for twelve (12) months, through TransUnion, to individuals whose personal information was potentially affected by this incident, at no cost to these individuals.

Additionally, Alta is providing impacted individuals with guidance on how to better protect against identity theft and fraud, is providing individuals with information on how to place a fraud alert and security freeze on one's credit file, the contact details for the national consumer reporting agencies, information on how to obtain a free credit report, a reminder to remain vigilant for incidents of fraud and identity theft by reviewing account statements and monitoring free credit reports, and encouragement to contact the Federal Trade Commission, their state Attorney General, and law enforcement to report attempted or actual identity theft and fraud.

Alta is providing written notice of this incident to relevant state and federal regulators, as necessary, and to the three major credit reporting agencies, Equifax, Experian, and TransUnion. Alta is also notifying the U.S. Department of Health and Human Services, and prominent media pursuant to the Health Insurance Portability and Accountability Act (HIPAA).

# EXHIBIT A

Alta Resources Corp.
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

P
[redacted]

000010102G0500 P

December 20, 2024

**NOTICE OF DATA EVENT**

Dear [redacted]:

Alta Resources Corp. ("Alta") is writing to notify you of a recent event that may impact the privacy of some of your information. Although we are currently unaware of any misuse of your information, we are providing you with information about the incident and steps you may take to protect against misuse of your information, should you feel it necessary to do so.

**What Happened?** Alta discovered encrypted files on certain computer systems. We promptly took steps to secure our systems and launched an investigation with the assistance of third-party forensic specialists to determine the nature and scope of the incident. Our investigation determined that there was unauthorized access to certain Alta servers between November 17, 2023 and November 18, 2023. We conducted a thorough review to identify the specific types of personal information potentially impacted and to whom such information relates. We recently completed that thorough review of the impacted data and determined that the information potentially accessible may have included personal information related to you.

**What Information Was Involved?** The data that relates to you and may have been affected by this incident includes your name and Social Security number.

**What We Are Doing.** Upon discovery, we immediately commenced an investigation to confirm the nature and scope of the incident. We reported this incident to law enforcement, and we are taking steps to implement additional safeguards and review policies and procedures relating to data privacy and security.

Although we are unaware of any actual or attempted fraudulent misuse of your information as a result of this incident, we are offering you access to twelve months of complimentary credit monitoring through Cyberscout, a TransUnion company specializing in fraud assistance and remediation services. In addition, we are providing notice to appropriate regulatory authorities.

**What You Can Do?** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and explanation of benefits statements, and monitoring your free credit reports for suspicious activity and to detect errors over the next 12 to 24 months. You may also review the information contained in the attached *Steps You Can Take to Protect Your Information*. We encourage you to enroll in these services as we are not able to do so on your behalf.

**For More Information.** We regret any concern this incident may cause, and recognize that you may have questions that are not addressed in this letter. If you have additional questions or concerns, please call our toll-free dedicated assistance line at [redacted]. This toll-free line is available Monday - Friday from 8:00 am to 8:00 pm Eastern Standard Time. Individuals may also write to Alta at 120 N Commercial St., Neenah, WI 54956.

Sincerely,

Alta Resources Corp.

## STEPS YOU CAN TAKE TO PROTECT YOUR PERSONAL INFORMATION

**Enroll in Monitoring Services**

To enroll in Credit Monitoring services at no charge, please log on to **https://bfs.cyberscout.com/activate** and follow the instructions provided. When prompted please provide the following unique code to receive services: [redacted]. In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18 years of age. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

0001020280000

P

**Monitor Your Accounts**

Under U.S. law, a consumer is entitled to one free credit report annually from each of the three major credit reporting bureaus, Equifax, Experian, and TransUnion. To order a free credit report, visit www.annualcreditreport.com or call, toll-free, 1-877-322-8228. Consumers may also directly contact the three major credit reporting bureaus listed below to request a free copy of their credit report.

Consumers have the right to place an initial or extended "fraud alert" on a credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If consumers are the victim of identity theft, they are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should consumers wish to place a fraud alert, please contact any of the three major credit reporting bureaus listed below.

As an alternative to a fraud alert, consumers have the right to place a "credit freeze" on a credit report, which will prohibit a credit bureau from releasing information in the credit report without the consumer's express authorization. The credit freeze is designed to prevent credit, loans, and services from being approved in a consumer's name without consent. However, consumers should be aware that using a credit freeze to take control over who gets access to the personal and financial information in their credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application they make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, consumers cannot be charged to place or lift a credit freeze on their credit report. To request a credit freeze, individuals may need to provide some or all of the following information:

1. Full name (including middle initial as well as Jr., Sr., II, III, etc.);
2. Social Security number;
3. Date of birth;
4. Addresses for the prior two to five years;
5. Proof of current address, such as a current utility bill or telephone bill;
6. A legible photocopy of a government-issued identification card (state driver's license or ID card, etc.); and
7. A copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft if they are a victim of identity theft.

Should consumers wish to place a credit freeze or fraud alert, please contact the three major credit reporting bureaus listed below:

| **Equifax** | **Experian** | **TransUnion** |
|---|---|---|
| https://www.equifax.com/personal/credit-report-services/ | https://www.experian.com/help/ | https://www.transunion.com/credit-help |
| 1-888-298-0045 | 1-888-397-3742 | 1-800-916-8800 |
| Equifax Fraud Alert, P.O. Box 105069 Atlanta, GA 30348-5069 | Experian Fraud Alert, P.O. Box 9554, Allen, TX 75013 | TransUnion Fraud Alert, P.O. Box 2000, Chester, PA 19016 |
| Equifax Credit Freeze, P.O. Box 105788 Atlanta, GA 30348-5788 | Experian Credit Freeze, P.O. Box 9554, Allen, TX 75013 | TransUnion Credit Freeze, P.O. Box 160, Woodlyn, PA 19094 |

**Additional Information**

Consumers may further educate themselves regarding identity theft, fraud alerts, credit freezes, and the steps they can take to protect your personal information by contacting the consumer reporting bureaus, the Federal Trade Commission, or their state Attorney General. The Federal Trade Commission may be reached at: 600 Pennsylvania Avenue NW, Washington, D.C. 20580; www.identitytheft.gov; 1-877-ID-THEFT (1-877-438-4338); and TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them. Consumers can obtain further information on how to file such a complaint by way of the contact information listed above. Consumers have the right to file a police report if they ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, consumers will likely need to provide some proof that they have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement and the relevant state Attorney General. This notice has not been delayed by law enforcement.

*For District of Columbia residents*, the District of Columbia Attorney General may be contacted at: 400 6th Street, NW, Washington, D.C. 20001; (202) 442-9828; and oag.dc.gov.

*For Maryland residents*, the Maryland Attorney General may be contacted at: 200 St. Paul Place, 16th Floor, Baltimore, MD 21202; 1-410-576-6300 or 1-888-743-0023; and https://www.marylandattorneygeneral.gov/. You may call Alta directly at (866) 558-6657.

*For Massachusetts residents*, you have the right to obtain any police report filed in regard to this event. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

*For New Mexico residents*, consumers have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in their credit file has been used against them, the right to know what is in their credit file, the right to ask for their credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting bureaus must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to consumers' files is limited; consumers must give consent for credit reports to be provided to employers; consumers may limit "prescreened" offers of credit and insurance based on information in their credit report; and consumers may seek damages from violators. Consumers may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active-duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage consumers to review their rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf, or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

*For New York residents,* the New York Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; or https://ag.ny.gov.

*For North Carolina residents*, the North Carolina Attorney General may be contacted at: 9001 Mail Service Center, Raleigh, NC 27699-9001; 1-877-566-7226 or 1-919-716-6000; and www.ncdoj.gov.

*For Rhode Island residents*, the Rhode Island Attorney General may be reached at: 150 South Main Street, Providence, RI 02903; www.riag.ri.gov; and 1-401-274-4400. Under Rhode Island law, individuals have the right to obtain any police report filed in regard to this event. There are approximately 13 Rhode Island residents that may be impacted by this event.